**Roger E. MEDEMA, Plaintiff,**

v.

**GOMBO'S MARINA CORPORATION and Kenneth L. Horkey, Defendants.**

**No. 81 C 0458.**

United States District Court,
N.D. Illinois, E.D.

Sept. 9, 1982.

Warren J. Marwedel, Dennis Minichello, Haskell & Perrin, Chicago, Ill., for plaintiff.

Michael Lapat, Lapat, Saunders & Fields, Chicago, Ill., William J. Truemper, Leonard J. Wojtecki, Aurora, Ill., for defendants.

## ORDER

ROSZKOWSKI, District Judge.

Before the court is the motion of defendant Gombo Marina Corporation to dismiss Counts II and III of the Complaint. For the reasons stated herein, the motion is denied. The facts, drawn primarily from the complaint, appear to be as follows.

The plaintiff, Roger E. Medema, stored his vessel, the Meershawn, with defendant Gombo Marina Corporation. Due to a fire at the Marina, plaintiff's vessel was damaged.

Plaintiff then filed this suit alleging breach of contract (Count I); failure to exercise care as a bailee (Count II); and negligence (Count III). Plaintiff alleges that this court has admiralty jurisdiction over this matter pursuant to 28 U.S.C. § 1333 and Rule 9(h).

The defendants' motion to dismiss challenges this court's admiralty jurisdiction over Counts II and III. The court must also consider whether it has admiralty jurisdiction over Count I, for the court is bound to independently inquire into its basis for jurisdiction.

Title 28, Section 1333 of the United States Code provides "[t]he district courts shall have original jurisdiction, exclusive of the courts of the states of: 1) any civil case of admiralty or maritime jurisdiction." In this case, plaintiff's claims sound in tort and contract.

Admiralty jurisdiction over maritime torts has traditionally been determined by looking to the situs of the tort. "If the wrong [took place] on navigable waters, the action is within the admiralty jurisdiction; if the wrong occurred on land it is not." *Executive Jet Aviation v. City of Cleveland,* 409 U.S. 249, 253, 93 S.Ct. 493, 497, 34 L.Ed.2d 454 (1972); *Fireman's Fund American Ins. Co. v. Boston Harbor Marina, Inc.,* 406 F.2d 917 (1st Cir.1969).

The tort of which the plaintiff complains in Count III, the Marina's negligence, occurred on land and not on navigable waters. Accordingly, this court lacks independent admiralty jurisdiction over Count III.

The claims sounding in contract, Counts I and II, present a more interesting jurisdictional question. Admiralty jurisdiction over contract claims does not depend upon situs; rather it depends upon whether the contract "relate[s] to ships in their use as ships or to commerce or transportation in navigable waters." *Ford Motor Co. v. Wallenius Lines, M/V Atlantic Cinderella,* 476 F.Supp. 1362, 1365 (E.D.Va.1979). The issue becomes whether this particular agreement has a "maritime flavor." *Id.* at 1366.

The agreement which gives rise to the alleged contract and bailment provided for the winter storage of a vessel. Nothing in the complaint alleges that the defendant was to perform any repair or cleaning services on the vessel.

No case directly holds that a federal district court has admiralty jurisdiction over a contract for winter storage of a vessel taken out of navigable waters. Admiralty jurisdiction exists where the contract provides for storage *and* repair or

other service. *E.g. Fireman's Fund American Ins. Co. v. Boston Harbor Marina, Inc.,* 285 F.Supp. 36 (D.Mass.1968), *vacated on other grounds,* 406 F.2d 917 (1st Cir.1969); *Schuster v. Baltimore Boat Sales, Inc.,* 471 F.Supp. 321 (D.Md.1979). Such contracts are maritime in nature because the repair and/or service component of the contract "relates to ships in their use as ships." Similarly, where pleasure crafts are stored in dry land-based racks in between intermittent weekend use, the dry storage is analogous to docking and admiralty jurisdiction exists because "the boats were not withdrawn from navigation." *American Eastern Dev. Corp. v. Everglades Marina, Inc.,* 608 F.2d 123 (5th Cir.1979).

Dicta in several cases suggests that a contract for mere vessel storage may be sufficient to establish admiralty jurisdiction. In *American Eastern Dev. Corp., supra,* the Fifth Circuit approvingly noted that "at least one court has recently implied that it would rest admiralty jurisdiction solely on the existence of a contract to store a boat." *Id.* at 125 n. 1. To the same effect, *see Fireman's Fund Amer. Ins. Co. v. Boston Harbor Marina, Inc.,* 285 F.Supp. 36 (D.Mass.1968), *vacated on other grounds,* 406 F.2d 917 (1st Cir.1969); *Schuster v. Baltimore Boat Sales, Inc.,* 471 F.Supp. 321, 322 (D.Md.1979).

■ After careful consideration of the question, this court agrees with the dicta found in the recent maritime cases and holds that a contract to store a boat for a winter season falls within a federal court's admiralty jurisdiction.

If a storage/repair contract is held to be a maritime contract, it follows that a contract exclusively for storage should be afforded similar status. To grant jurisdiction on the basis of a minor repair component in a storage contract, yet deny jurisdiction over a contract which is identical in all respects but for the absence of a repair component, is to premise jurisdiction on the basis of an artificial distinction. The substance of each contract is the same.

Furthermore, a winter storage contract does affect a ship in its use as a ship in navigable water.[1] Protecting a vessel from harsh winter elements preserves that vessel's seaworthiness as much or more as the painting, washing, or other minor repairs which are often the subject of repair clauses in storage contracts.

Finally, the court notes that the storage contract in this case related to an existing vessel. The significance of this factor is discussed in the Benedict treatise on Admiralty.

That a maritime contract is defined to be one having reference to commerce or navigation. The particular element essential to give it a maritime character is direct connection with commercial transactions or navigation; and such connection is lacking in a contract to create a new ship, or, if not lacking entirely, it is remote and contingent, so that it is not perceptible at the time the contract goes into effect as a binding obligation. *But whatever is done to or about an existing ship has direct reference to commerce and navigation.* A ship in *use* as a maritime subject gives a maritime character to all transactions directly connected with it. The cases are distinguishable thus: one class, founded upon contracts for repairing and rebuilding of vessels, holds such contracts to be maritime, because they affect vessels in *esse;* the other class, founded upon contracts for the building of proposed vessels, holds such contracts to be non-maritime, because they touch maritime subjects only by relation to proposed vessels, the future existence of which is contingent upon performance of the terms of the contract in each case.

1 Benedict, Admiralty § 189 (1981) (Emphasis supplied). This factor further strengthens the maritime flavor of the contract.

---

**1.** The pleadings do not expressly state that the Meershawn was used on navigable waters. The court's opinion assumes from the parties' silence on the issue that the vessel was operated on navigable waters. If this assumption is incorrect, the defendant is instructed to renew its motion to dismiss for lack of subject matter jurisdiction.

In finding admiralty jurisdiction, the court emphasizes that its holding would not extend to any storage contract. The storage contract in the present case was for seasonal winter storage. The vessel was used in spring and summer. This is not a contract for storage over an extended period of time, for example, several years. The court's holding today is therefore limited to seasonal storage contracts.

Now that it has been determined that the court possesses admiralty jurisdiction over the contract claims (Counts I and II), ancillary jurisdiction exists over the pendent state negligence claim (Count III). The negligence claim arises out of the same nucleus of operative facts as the contract claims. Ancillary jurisdiction is therefore appropriate. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Morse Electric Products Corporation v. S.S. Great Peace,* 437 F.Supp. 474 (D.N.J.1977).

For these reasons, the defendant's motion to dismiss is denied.