**LLOYDS OF LONDON as Subrogee of YACHT LOUISE, Her Owners, etc., Plaintiff,**

v.

**MONTAUK YACHT CLUB & INN and Eastern Long Island Appliance, Defendants.**

No. CV 88–0669.

United States District Court, E.D. New York.

Feb. 9, 1989.

Thomas H. Healey, New York City, for plaintiff.

Fogarty & Fogarty, P.C. by Edward M. Fogarty, Mineola, N.Y., for Montauk Yacht Club & Inn.

Rivkin, Radler, Dunne & Bayh by Elliot S. Pasik, Uniondale, N.Y., for Eastern Long Island Appliance.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

The present admiralty action arises out of a fire aboard a yacht-pleasure boat docked at the Montauk Yacht Club & Inn ("Montauk"). Pursuant to Fed.R.Civ.P. 56 defendant—Eastern Long Island Appliance ("Eastern") moves this Court for summary judgment for lack of subject matter jurisdiction.[1]

In July 1986, the yacht "Louise," which was primarily used as a pleasure boat, was docked at the Montauk Yacht Club & Inn. On July 26, 1986, the yacht owners and Eastern entered into a contract whereby Eastern undertook to repair a washer/dryer unit situated aboard the yacht.

Eastern removed the entire washer/dryer unit and repaired it on its own premises. Soon afterwards, Eastern returned and reinstalled the unit aboard the yacht. On July 27, 1986 a fire destroyed the yacht.

In its complaint, plaintiff alleges that Eastern's "faulty" repair of the washer/dryer unit caused the fire. Plaintiff claims Eastern committed "acts of negligence, breach of contract, breach of implied and express warranties and breach of the Maritime Implied Warranty of Workmenlike Services" (Complaint at ¶ 11).

---

1. Defendant Montauk Yacht Club does not contest the existence of subject matter jurisdiction.

**1176**

Plaintiff further alleges that Montauk failed to contain and control the fire.

Defendant Eastern moves this Court for summary judgment claiming a lack of subject matter jurisdiction.

## FEDERAL ADMIRALTY TORT JURISDICTION

Under traditional admiralty law, federal admiralty jurisdiction in tort existed whenever the actionable conduct occurred on a navigable waterway. *Victory Carriers Inc. v. Law*, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971).

■ However, modern Supreme Court decisions add a second requirement. Admiralty jurisdiction in tort exists not only when the wrong (1) took place on navigable waters ("situs"), but also (2) has a connection with "traditional" forms of maritime commerce or navigation ("status"). *See Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 272, 93 S.Ct. 493, 506, 34 L.Ed.2d 454 (1972); *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982).

■ Thus, in order to create federal admiralty jurisdiction, it is insufficient to allege wrongful conduct on the high seas. The case must present facts yielding a maritime flavor. For example, in the following cases, courts have held that federal admiralty jurisdiction does not exist: *Whittington v. Sewer Construction Company, Inc.*, 541 F.2d 427 (4th Cir.1976) (shore-based injury, inflicted by a winch and choker, lacked a maritime nexus); *Smith v. Knowles*, 642 F.Supp. 1137 (D.Md.1986) (no admiralty jurisdiction over drowning incident off a pleasure boat which was not caused by any navigational error); *Petrou v. U.S.*, 529 F.Supp. 295 (D.Md.1981) (painter fell from a ladder attached to an iron railing on a lighthouse into a waiting boat, and admiralty jurisdiction held not to exist because the wrong complained of, the broken iron railing, did not involve the mari-

time function of the lighthouse); *Feehan v. U.S. Lines, Inc.*, 522 F.Supp. 811 (S.D.N.Y. 1980) (plaintiff, while loading and unloading cargo on a dock, was hit by a specialized motor vehicle used to transport cargo, and no admiralty jurisdiction held to exist).

■ The case at bar bears no connection to "traditional" forms of maritime commerce or navigation. Defendant is accused of repairing negligently a washer/dryer unit situated aboard the yacht. However, the unit is not designed or constructed for maritime use. *See* Defendant's Rule 3(g) Statement; Declaration of Edward Stypulkowski.[2] Instead, the unit is an ordinary washer/dryer intended for use in small apartments, homes, etc.

The alleged negligent repair of the unit presents no relationship to traditional maritime concerns. This ordinary unit was removed from the yacht and repaired on land. *See, e.g., Matter of Sisson*, 668 F.Supp. 1196 (N.D.Ill.1987). Accordingly, this case does not involve the service or repair of a ship, which would yield admiralty jurisdiction; such cases are maritime in nature. *See Schuster v. Baltimore Boat Sales, Inc.*, 471 F.Supp. 321, 332 (D.Md.1979); *Ziegler v. Rieff*, 637 F.Supp. 675, 677 (S.D. N.Y.1986).

Therefore, federal admiralty jurisdiction in tort does not exist.

## FEDERAL ADMIRALTY CONTRACT JURISDICTION

In order to acquire federal admiralty jurisdiction, a contract must possess "maritime flavor." Thus, the sale of defective maritime engine parts and negligent servicing of the ship's engine, *Maru v. Burmeister*, 528 F.Supp. 210 (S.D.N.Y.1982), or a contract for the servicing and harboring of a yacht, *Ziegler v. Rieff*, 637 F.Supp. 675 (S.D.N.Y.1986), create admiralty jurisdiction.

**2.** Although in his response to defendant's Rule 3(g) Statement plaintiff asserts that the unit "appeared to be designed for maritime use, plaintiff admitted to defendant's physical description of the unit but claimed "insufficient

information" to comment on its primary use. However, plaintiff offered no evidence nor submitted any affidavits to support those contentions.

However, as already discussed by the Court, a contract for repairing an ordinary washer/dryer unit which happens to be situated aboard a yacht is not a contract evincing maritime concerns.

Therefore, federal admiralty jurisdiction in contract does not exist.

## CONCLUSION

Lacking federal subject matter jurisdiction over defendant Eastern, the Court grants Eastern's motion for summary judgment.

SO ORDERED.